UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| PATRICK A JUNEAU III MD APMC | CASE NO. 6:21-CV-01057 |
| VERSUS | JUDGE ROBERT R. SUMMERHAYS |
| TRAVELERS PROPERTY CASUALTY INSURANCE CO | MAGISTRATE JUDGE PATRICK J. HANNA |

MEMORANDUM RULING

Presently before the Court is the Defendant the Phoenix Insurance Company's Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) [ECF No. 23]. Plaintiff has filed an Opposition to the Motion.

I.
BACKGROUND

Plaintiff is a professional medical corporation that specializes in neurosurgery and is located in Lafayette, Louisiana.[1] Like many businesses across the country, Plaintiff claims financial losses due to government orders issued starting in the spring of 2020 to address the spread of COVID-19.[2] Plaintiff points to Louisiana Governor John Bel Edwards' March 11, 2020 proclamation declaring a public health emergency as a result of the COVID-19 pandemic—Proclamation Number 25 JBE 2020(the "Proclamation"). Plaintiff alleges that the Proclamation prevented Plaintiff from performing the "routine" surgical services normally offered at its office—such as "spinal, neck and carpal tunnel surgeries"—and restricted Plaintiff to performing only "procedures deemed medically necessary."[3] Plaintiff alleges that its temporary inability to provide

---

[1] ECF No. 1, Petition for Declaratory Judgment, ¶ 4.
[2] *Id.*, ¶¶ 6, 10.
[3] *Id.*, ¶ 12.

1

routine surgical services at its office caused Plaintiff to sustain a substantial loss of business income and to incur extra expenses.[4]

Plaintiff alleges that its losses and expenses are covered under an insurance policy (the "Policy") it purchased from Phoenix Insurance Co. ("Phoenix"). Plaintiff alleges that its losses are covered under the Policy's Business Income, Extra Expense, and Civil Authority provisions.[5] Plaintiff alleges that Phoenix has breached the Policy by failing to cover its business interruption losses under the Policy and seeks money damages,[6] a declaratory judgment that the Policy covers Plaintiff's alleged economic losses,[7] and an order "enjoining Defendant from continuing to engage in conduct related to the breach of the Policy."[8]

The provisions at issue are found in the Policy's Businessowners Property Coverage Special Form.[9] The grant of coverage for Business Income and Extra Expense provides, in relevant part, as follows:

**a. Business Income**

\*\*\*

(2) We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss.

\*\*\*

**b. Extra Expense**

---

[4] *Id.*, ¶¶ 26, 28.
[5] *Id.*, ¶¶ 26-28.
[6] *Id., see* Counts II, IV and VI.
[7] *Id., see* Counts I, III and V.
[8] *Id.*, ¶¶ 37, 50, 64; *Id.*, p. 15 (Prayer for Relief).
[9] *See* ECF No. 23, Ex. B, p. 14 of 134.

2

> (1) Extra Expense means reasonable and necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss of or damage to property caused by or resulting from a Covered Cause of Loss.3 (Id., pp. 16-17 of 134 (emphasis added)).

The Policy also provides a limited "Civil Authority" coverage according to the following terms:

> **g. Civil Authority**
>
> (1) When the Declarations show that you have coverage for Business Income and Extra Expense, you may extend that insurance to apply to the actual loss of Business Income you sustain and reasonable and necessary Extra Expense you incur caused by action of civil authority that prohibits access to the described premises. The civil authority action must be due to direct physical loss of or damage to property at locations, other than described premises, that are within 100 miles of the described premises, caused by or resulting from a Covered Cause of Loss.[10]

Civil Authority coverage begins 24 hours after the time of the action of civil authority and extends for up to three consecutive weeks.[11] Here, the "premises" referenced in this provision is Plaintiff's office location at 1103 Kaliste Saloom Road, Suite 206, in Lafayette, Louisiana.

Each of the coverages sought by Plaintiff require, among other things, direct physical loss of or damage to property that is caused by or results from a "Covered Cause of Loss." The term "Covered Causes of Loss" (as used in all of the foregoing provisions) is defined as "RISKS OF DIRECT PHYSICAL LOSS unless the loss is . . . Excluded in Paragraph B., Exclusions."[12]

The Policy also includes an exclusion entitled "EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA" (the "Virus Exclusion"), which provides as follows:

> A. The exclusion set forth in Paragraph B. applies to all coverage under all forms and endorsements that comprise this Coverage Part or Policy, including but not limited to . . . forms or endorsements that cover business income, extra expense, . . . . or action of civil authority.

---

[10] Id., p. 29 of 134.
[11] Id.
[12] Id., pp. 17-18 of 134.

3

B. We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.[13]

## II.
### LAW AND ANALYSIS

**A.  Motion to Dismiss Standard.**

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is appropriate when a complaint fails to state a legally cognizable clam.[14] In other words, a Rule 12(b)(6) motion "admits the facts alleged in the complaint, but challenges plaintiff's rights to relief based upon those facts."[15] When deciding a Rule 12(b)(6) motion, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."[16] "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[17] Moreover, "the plaintiff must plead enough facts 'to state a claim to relief that is plausible on its face.'"[18] The requirement that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.[19] In considering a Rule 12(b)(6) motion, a court must limit itself to the contents of the complaint, including documents attached to or incorporated

---

[13] *Id.*, p. 118 of 134. The Virus Exclusion is found in an endorsement to the Policy entitled "Exclusion of Loss Due to Virus or Bacteria." That endorsement states that it "modifies insurance provided under the. . .COMMERCIAL PROPERTY COVERAGE PART." (*Id.*). Section G of the Policy's Common Policy Conditions makes clear that "Endorsements referencing the Commercial Property Coverage Part . . . apply to the Businessowners Property Coverage Special Form in the same manner as they apply to the forms they reference." (*Id.*, pg. 13 of 134).
[14] *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).
[15] *Id.* at 161-62.
[16] *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted).
[17] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations, quotation marks, and brackets omitted).
[18] *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 570).
[19] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (citing *Twombly*, 550 U.S. at 555).

by the complaint, and matters of which judicial notice may be taken, including matters of public record.[20]

"In diversity cases, a federal court must apply federal procedural rules and the substantive law of the forum state."[21] Therefore, in this case, Louisiana substantive law regarding the interpretation of insurance contracts must be applied. Under Louisiana law, "an insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code."[22] The Court's role is to attempt to determine the intentions of the parties based on the language of the contract itself, "using their plain, ordinary and generally prevailing meaning," unless those words have acquired a technical meaning.[23] "An insurance contract, however, should not be interpreted in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or restrict its provisions beyond what is reasonably contemplated by unambiguous terms or achieve an absurd conclusion."[24]

**B.     Business Income and Extra Expense Coverage.**

Phoenix first argues that the Policy is limited to "physical loss of or damage to" the property and that Plaintiff has not alleged facts showing the physical loss or damage necessary to trigger coverage under the relevant provisions of the Policy. Each of the relevant provisions in the Policy explicitly require "physical loss of or damage to" the property. Fifth Circuit jurisprudence supports Phoenix's position that "physical loss of or damage to" property typically requires demonstrable,

---

[20] *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498 (5th Cir. 2000); *Lovelace v. Software Spectrum Inc.,* 78 F.3d 1015, 1017-18 (5th Cir. 1996); *Norris v. Hearst Trust,* 500 F.3d 454, 461 n.9 (5th Cir. 2007).
[21] *Hyde v. Hoffmann-La Roche, Inc.,* 511 F.3d 506, 510 (5th Cir. 2007).
[22] *In re Chinese Manufactured Drywall Prod. Liab. Litig.,* 759 F. Supp. 2d 822, 829 (E.D. La. 2010) (quoting *Cadwallader v. Allstate Ins. Co.,* 848 So.2d 577, 580 (La. 2003)).
[23] *Id.*
[24] *Id.*

5

physical alteration of the property.[25] More importantly, courts have consistently—and uniformly—held that losses incurred because of COVID-19 mandates are purely *economic* in nature.[26]

Significantly, the Fifth Circuit recently held, in a case governed by Louisiana law, that the language "direct physical loss of or damage to property" covers only "tangible alterations of, injuries to, and deprivations of property."[27] In addition, in *PHI Group, Inc. v. Zurich American Insurance Company*, this Court recently addressed nearly identical policy language and held that:

> While PHI is correct that the virus itself is physical, there is no evidence that the mere existence of the virus results in a physical loss of or damage to property. It is common knowledge that, if left alone, the coronavirus in a building or on a surface will naturally die within hours to days and that the coronavirus can be safely eliminated with simple cleaning or sanitizing. Following the eradication of the virus through either method, no physical change to the surface or building remains thereafter. The temporary presence of the virus does not physically or permanently change property. Accordingly, the presence of the coronavirus that causes COVID19 does not result in direct physical loss of or damage to property and does not trigger coverage under Zurich's insurance policy. Consequently, there are no facts supporting the conclusion that the policy provides coverage under the policy,

---

[25] *See Terry Black's Barbecue, LLC v. State Automobile Mutual Insurance Co.*, 22 F.4th 450 (5th Cir. 2022) (in a case interpreted under Texas law, the term "physical loss of property" means a tangible alteration or deprivation of property); *Hartford Ins. Co. of Midwest v. Mississippi Valley Gas Co.*, 181 F. App'x 465, 470 (5th Cir. 2006) ("The language 'physical loss or damage' strongly implies that there was an initial satisfactory state that was changed by some external event into an unsatisfactory state—for example, the car was undamaged before the collision dented the bumper.")

[26] *See, e.g., Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, 2 F.4th 1141 (8th Cir. 2021) (holding that the plaintiff's loss of use of its office did not constitute "physical loss" or "physical damage"); *Gilreath Family & Cosmetic Dentistry, Inc. v. Cincinnati Ins. Co.*, No. 21-11046, 2021 WL 3870697, at *2 (11th Cir. August 31, 2021) ("there must be 'an actual change in insured property' that either makes the property 'unsatisfactory for future use' or requires 'that repairs be made'"); *Lafayette Bone & Joint Clinic, Inc. v. Trans. Ins. Co.*, No. 6:21-CV-00317, 2021 WL 1740466, at *3 (W.D. La. May 3, 2021) ("every district court within the circuit to address the issue has determined that a building's exposure to the coronavirus does not meet this requirement"); *Kevin Barry Fine Art Assocs. v. Sentinel Ins. Co., Ltd.*, 513 F. Supp. 3d 1163, 1171 (N.D. Cal. 2021); *Uncork & Create LLC v. Cincinnati Ins. Co.*, 498 F. Supp. 3d 878 (S.D. W. Va. 2020); *Nguyen v. Travelers Cas. Ins. Co. of Am.*, No. 2:20-CV-00597, 541 F.Supp.3d 1200, 2021 WL 2184878, at *3 (W.D. Wash. May 28, 2021) (holding that the coronavirus did not cause "direct physical loss of or damage to" the property of hundreds of businesses that filed suit against their insurers); *Terry Black's Barbecue, LLC v. State Auto. Mut. Ins. Co.*, 514 F.Supp.3d. 896, 907 (W.D. Tex. 2021); *Diesel Barbershop LLC v. State Farm Lloyds*, 479 F.Supp.3d 353, 360 (W.D. Tex. 2020); *Laser & Surgery Center of Acadiana LLC v. Ohio Casualty Insurance Co.*, No. 6:2021-CV-01236, 2021 WL 2702123, at *3 (W.D. La. June 14, 2021), report and recommendation adopted, 2021 WL 2697990 (W.D. La. June 30, 2021); *Pierre v. Transportation Ins. Co.*, No. 6:20-CV-01660, 2021 WL 1709380, at *3 (W.D. La. Apr. 29, 2021).

[27] *Q Clothier New Orleans, LLC v. Twin City Fire Insurance* Company, ___ F.4th ___ (5th Cir. 2022), 2022 WL 841355.

and this Court finds that PHI has failed to state a claim upon which relief can be granted.[28]

The Court's reasoning in *PHI Group, Inc.* applies with equal force to the instant case. Accordingly, Plaintiff has not pled a viable claim based on coverage under the Business Income and Extra Expense coverage provision of the Policy.

### C. Civil Authority Coverage.

Phoenix next argues that Plaintiff cannot assert a viable claim under the Civil Authority provision of the Policy. To trigger coverage under this provision, Plaintiff must allege facts showing, among other things, that: (1) the Proclamation prohibited access to the Premises, and (2) the Proclamation was issued "due to" direct physical loss of or damage to property at a location away from, but within 100 miles of, the Premises that was caused by a Covered Cause of Loss.

Plaintiff has not alleged that any civil authority prohibited Plaintiff, its staff or its patients from accessing the Premises. Indeed, Plaintiff's Complaint alleges that its staff and patients at all times had access to the Premises and that Plaintiff performed medical and surgical services there continuously since March 11, 2020.[29] Plaintiff alleges only that the Proclamation temporarily required Plaintiff to limit the types of services performed at the Premises.[30] The Fifth Circuit has held that the term "prohibit" as used in this provision of the Policy means to "to forbid [access] by authority or command."[31] In other words, the Policy language requires proof that Plaintiff was prevented from accessing the Premises.[32] Viewing the allegations of the Complaint as true, that is not the case here. Moreover, the Policy's Civil Authority endorsement only applies to civil

---

[28] *PHI Group, Inc. v. Zurich American Insurance Company*, No. 6:21-CV-883, 2021 WL 7162529 (W.D. La. Oct. 18, 2021), Report and Recommendation adopted, 2022 WL 553705 (W.D. La. Feb. 23, 2022).
[29] ECF No. 1, ¶ 11.
[30] *Id.*
[31] *730 Bienville Partners, Ltd. v. Assurance Co. of Am.*, 67 F. App'x 248, 2003 WL 21145725 (5th Cir. 2003).
[32] *See Commstop v. Travelers Indem. Co. Conn.*, 2012 WL 1883461, at *10 (W.D. La. May 17, 2012).

7

authority orders issued "due to direct physical loss of or damage to property." The Fifth Circuit has specifically held that coverage under a similar civil authority provision requires a nexus between the civil authority order and property damage or losses near the insured premises.[33] As discussed above, there was no direct physical loss of or damage to property. Accordingly, Plaintiff cannot assert a viable claim for coverage under the Civil Authority provision of the Policy.

### D. Virus Exclusion.

Finally, Phoenix argues the Policy's Virus Exclusion excludes coverage that even if Plaintiff's claim arguably falls under another provision of the Policy. In that regard, the Policy provides that Phoenix "will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease."[34] Plaintiff alleges that the Virus Exclusion does not apply because the loss was due to the Governor's Proclamation, not to the COVID-19 virus itself. The Court disagrees. The specific text of the Governor's Proclamation states that it was issued in response to "an outbreak of respiratory disease caused by a novel (new) coronavirus that was first detected in China and which has now been detected in many other countries, including the United States."[35] A state of emergency was declared because the Governor and the State of Louisiana had "reason to believe that COVID-19 may be spread amongst the population by various means of exposure, thereby posing a high probability of widespread exposure and a significant risk of substantial future harm to a large number of Louisiana citizens."[36] In fact, Plaintiff acknowledges that the purpose of the Proclamation was "to mitigate and slow the spread of COVID-19 regardless of whether the virus

---

[33] *Q Clothier New Orleans, LLC v. Twin City Fire Insurance* Company, ___ F.4th ___ (5th Cir. 2022), 2022 WL 841355.
[34] ECF No. 23, Ex. B, p. 118 of 134.
[35] ECF No. 23, Ex. A, p. 1.
[36] *Id.*, p. 2.

was present or not at any of the businesses affected facilities."[37] Since both the Complaint and the Proclamation acknowledge that the Proclamation was issued only because of the spread of the virus that caused COVID-19, the Court concludes that the Complaint alleges loss or damage "resulting from" an excluded risk, specifically, a "virus that induces or is capable of inducing physical distress, illness or disease."[38] Moreover, Courts have consistently held that similar virus exclusions bar coverage for business income losses where the insured alleged that government orders issued to slow the spread of COVID-19 resulted in an interruption of their business operations.[39]

For the foregoing reasons, Plaintiff's Complaint fails to state a claim upon which relief can be granted. Further, based upon the Court's ruling, Plaintiff cannot cure the deficiencies so granting leave to amend would be futile. Accordingly, Phoenix's Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) [ECF No. 23] is GRANTED and all causes of action set forth in the Complaint are DISMISSED.

THUS DONE in Chambers on this __23rd__ day of March, 2022.

ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE

---

[37] ECF No. 1, Complaint, ¶ 20.
[38] ECF No. 23, Ex. B, p. 118 of 134.
[39] *See Q Clothier New Orleans LLC*, 2021 WL 1600247 at *8 (E.D. La. Apr. 23, 2021) (holding that virus exclusion extinguishes insured's claim for business income coverage based on effects of government orders); *Real Hosp., LLC*, 499 F.Supp.3d at 297 (granting motion to dismiss restaurant's claim for business income loss due to government shutdown orders and emphasizing that identical Virus exclusion "clearly and unequivocally exempts 'loss or damage caused by or resulting from any virus.'"); *Frosch Holdco, Inc. v. Travelers Indem. Co.*, No. 4:20-CV-1478, 2021 WL 1232777, at *4-5 (S.D. Tex. Feb. 11, 2021) (applying a similar virus exclusion to bar coverage for business income loss attributable to government closure orders, district court noted that the exclusion "is plainly stated and free of any ambiguous jargon, and explicitly encompasses both direct and indirect losses").